AUG – 5 2014

# SUMMONS
Rule 4 1970 Ohio Rules of Civil Procedure
Court of Common Pleas, Medina County, 93 Public Square, Medina, OH 44256

**COPY**

Case #: 14CIV0785

To the following named defendant:

**MEDINA CITY SCHOOL DISTRICT
140 WEST WASHINGTON ST
MEDINA, OH 44256**

You have been named as defendant in a complaint filed in this court by the following plaintiff:

Plaintiff: CHASE JOHANSON(et al)

You are hereby summoned and required to serve upon the plaintiff's attorney, or upon the plaintiff if he has no attorney of record, a copy of your answer to this complaint within **twenty-eight (28)** days after the service of this summons upon you, excluding the date of service.

Failure to appear and present a defense to this complaint will result in a judgment by default being rendered against you for the relief demanded in the complaint. Your answer must be filed with the court within **three days (3)** after the service of a copy of the answer on the plaintiff's attorney.

The name and address of the plaintiff attorney is as follows:

**STEVE C BAILEY
THE BAILEY LAW FIRM
60 PUBLIC SQUARE STE 202
MEDINA, OH 44256**

7/24/2014



**DAVID B. WADSWORTH**
Clerk of Courts

JLO
By: Deputy Clerk



THE OHIO LEGAL BLANK CO., INC.
**EXHIBIT**
A
CLEVELAND, OHIO 44102-1799

IN THE COURT OF COMMON PLEAS
MEDINA COUNTY, OHIO

COMMON PLEAS COURT

14 JUL 23 PM 3: 55

CHASE JOHANSON
1113 Dover Drive
Medina, OH 44256

CASE NO.

**14CIV0285**

FILED

Plaintiff

JUDGE

vs.

CHRISTOPHER J. COLLIER, JUDGE

MEDINA CITY SCHOOL DISTRICT
140 West Washington Street
Medina, Ohio 44256

COMPLAINT

(JURY DEMAND ENDORCED HEREON)

JEFF HARRISON
C/O MEDINA CITY SCHOOL
DISTRICT
140 West Washington Street
Medina, Ohio 44256

BRYAN FARSON
C/O MEDINA CITY SCHOOL
DISTRICT
140 West Washington Street
Medina, Ohio 44256

ANTHONY STACEY
C/O SANDUSKY CITY SCHOOL DISTRICT
407 Decatur St.
Sandusky, OH 44870

Also serve at:
ANTHONY STACEY
C/O MEDINA CITY SCHOOL DISTRICT
140 West Washington Street
Medina, OH 44256

Defendants

Now comes Plaintiff, by and through counsel, and for his complaint states as follows:

of his constitutionally protected speech; and for refusing or neglecting to prevent such deprivations and denials to Plaintiff.

2. This Court has concurrent jurisdiction with the Federal Courts of the United States over the causes of action raised in this Complaint.

3. The Plaintiff is an individual and citizen of the United States of America whose domicile is in Medina County Ohio.

4. All actions upon which this Complaint arises occurred in Medina County Ohio.

5. Defendant, Medina City School District is a political subdivision of the State of Ohio with the responsibility and authority for administration of all aspects of the Medina City School District including Medina High School.

6. Defendant Anthony Stacey is or was the head varsity basketball coach at Medina High School.

7. Defendant Jeff Harrison is or was the athletic director for Medina High School.

8. Defendant Bryan Farson is or was the principal of Medina High School.

9. Plaintiff is a former student at Medina High School and a participant in that school's basketball program.

10. To the best of Plaintiff's knowledge and belief his relationship with the Medina High School Basketball Program began to sour in December of 2010 during his sophomore year when there was a conflict between a school sponsored musical performance, in which Plaintiff was a participant, and a basketball game. Following the code of conduct for the school, when such a conflict arises, there was an agreement that he could participate in the musical performance with no clarification of penalty. However, as a result of his participation he was made ineligible to participate in one half of their next basketball game.

11. At the time of this incident Plaintiff was a minor. Since the matter had been coordinated with the coach well in advance, pursuant to school policy, his parents complained to Athletic Director Harrison about the treatment of their son. The Coach was required to apologize.

12. Following this incident Plaintiff's playing time was noticeably reduced for the remainder of the season and he was singled out for negative treatment. After the season concluded, Plaintiff's parents discussed their concerns with Athletic Director Harrison who indicated that there would be new coaching staff the following season.

13. During the summer of 2011 Head Coach Stacey ran a summer basketball clinic in which Plaintiff participated.

14. Despite the coaching change, Plaintiff again felt that he was treated negatively and differently than other players.

15. Because of his treatment in the summer clinic, his parents again brought up the issue with Athletic Director Harrison asking him to keep an eye on the situation during the fall and winter 2011 basketball season.

16. At the beginning of the 2011 basketball season Plaintiff was assigned a varsity jersey number by an assistant coach prior to picture day. However, when Plaintiff attempted to retrieve his varsity jersey, Head Coach Stacey told him in front of the entire team that he wasn't on the varsity team and to go get a junior varsity jersey.

17. Plaintiff's mother who was a member of the booster club for Medina Athletics happened to be present during the above mentioned incident. She approached Coach Stacey and asked if he was trying to encourage her son to quit. Coach Stacey replied "I don't care what he does, and I'm not discussing this with you."

18. All of the other junior basketball participants dressed in varsity jerseys for the team picture.

19. As the 2011-2012 basketball season progressed Plaintiff participated on the junior varsity team where he performed exceptionally well.

20. Despite his performance Plaintiff was passed over for promotion to the varsity team by at least one underclassman who was not a starter on the junior varsity team.

21. A friend of Plaintiff, and varsity basketball player, while having a conversation with Coach Stacey inquired about the status of Plaintiff, to which Coach Stacey replied "I don't like that kid."

22. The junior varsity coach told Plaintiff that he supported his promotion to varsity and suggested that he set up a meeting with Coach Stacey.

23. On January 28, 2012 a meeting was held between Plaintiff and Coach Stacey in which Plaintiff sought the coach's input as to what he needed to do to be given the opportunity on varsity. Coach Stacey told him among other things that he was disrespectful and did not listen.

24. Upon learning of the coach's comments, Plaintiff's mother contacted the Junior Varsity Coach who informed her that her son was not disrespectful and that he did not know what Coach Stacey's problem with him was.

25. In the summer of 2012, Plaintiff again participated in summer basketball and again felt that he was treated negatively and differently than the other players.

26. Because it is a policy that seniors cannot participate in junior varsity, Plaintiff was put on varsity for his senior year but was relegated to very little playing time.

27. On December 11, 2012 Plaintiff participated in a game in which his performance was of a high quality.

28. However, on December 14, 2012 Plaintiff sat on the bench the entire game.

29. After the game and away from the school Plaintiff sent a private "tweet" on the Twitter Social Media System which stated "Am I that bad that I can't even play on a losing team?"

30. The next day on December 15, 2012, the Medina High School Basketball Team participated in a cancer benefit game. It was well known to the players and the coaches that this game was extremely important to Plaintiff as his mother was struggling with cancer. Plaintiff was not played at all in this game.

31. Following the game Plaintiff had a conversation with a coach from another high school who told him that if Plaintiff were playing for him he would start every game.

32. Following this conversation and again away from the team and school property, Plaintiff sent a second private tweet stating "At this point the trainer has been on the floor more than I have." He then sent a subsequent tweet stating "At least the Elyria and Brunswick coaches would take me to play basketball."

33. The above reference three tweets occurred on a Friday and a Saturday night. On Monday, December 17th Principal Farson contacted Plaintiff's mother informing her that her son would not be allowed to practice that day and that Coach Stacey wanted Plaintiff removed from the team. When Plaintiff's mother tried to relay to Principal Farson the history of this matter the Principal responded that Coach Stacey was "too angry" to have Plaintiff at practice and they would discuss the matter further at a meeting the next day.

34. Plaintiff's mother also contacted Athletic Director Harrison who also refused to intervene on Plaintiff's behalf.

35. Plaintiff's mother then forwarded a letter she had written about Plaintiff's problems to Athletic Director Harrison.

36. The following day on December 18, 2012, there was a meeting attended by Plaintiff, his parents, Principal Farson, Athletic Director Harrison (by telephone), the Junior Varsity Basketball Coach and Head Coach Stacey to discuss why Plaintiff was removed from practice.

37. At this meeting Head Coach Stacey tried to justify his removal of Plaintiff from the team by saying he was "consistently late to practice."

38. However, in a subsequent meeting between the parties and the then superintendant of Medina City Schools, Athletic Director Harrison admitted that Coach Stacey's statement had not been true.

39. At this meeting Plaintiff specifically asked when he was "kicked off" the team. To that question Principal Farson responded "you were kicked off the team the minute you tweeted."

40. From this point forward Plaintiff was not permitted to participate in the basketball program.

41. Other coaches and students were known to make tweets of various kinds and other public comments that could be read in a negative light and no sanctions were ever taken against such people.

42. In May of 2013, Plaintiff and his mother met with Principal Farson trying to get an explanation as to why other people's tweets were not being treated the same as Plaintiffs. Principal Farson asked them to leave saying to them "you can bash me in the car on the way home."

43. In the months following Plaintiff's dismissal from the team, he and his parents had requested a written report as required by the Medina School Student Parent Handbook. No such written report was produced.

44. In June 2013 after Plaintiff had graduated from Medina High School, Principal Farson informed Plaintiff's mother that neither he nor Athletic Director Harrison were required to write a disciplinary report despite the clear direction of the Student Parent Handbook.

45. Finally, in June 2013 Principal Farson and Athletic Director Harrison wrote a report six months after Plaintiff's removal from the team and a month after he graduated from high school, which included a number of discrepancies.

## COUNT I

1. Plaintiff reasserts each and every allegation above as if fully restated here.

2. Plaintiff's and his parents' actions in speaking with school officials, writing to school officials, complaining about the treatment of Plaintiff, and Plaintiff's private communications by Twitter are all activity protected by the First Amendment to the United States Constitution as made effective as to the states by the Fourteenth Amendment to the United States Constitution.

3. Plaintiff's ill treatment and ultimately his removal from the Medina High School Basketball Team in his senior year was a direct retaliation against him for the Constitutionally protected activity engaged in by both he and his parents.

4. As a direct and proximate result of this retaliation, Plaintiff suffered humiliation and embarrassment, a loss of liberty, and lost opportunities for both personal enrichment and potential scholarships.

## COUNT II

1. Plaintiff reasserts each and every allegation above as if fully restated here.

2. Plaintiff had a desire to participate in the Basketball Program of Medina High School at the highest level that he could achieve.

3. Plaintiff's opportunity to participate in the basketball program is a liberty interest.

4. The Fourteenth Amendment to the United States Constitution prohibits the government from depriving a citizen of a liberty interest without due process of law.

5. A fundamental principle of due process is notice of the conduct that is expected of a citizen.

6. The Student Parent Handbook of the Medina City School District has no policy or mention of prohibition upon private communications through social media. As such, Plaintiff had no notice that such communication was prohibited.

7. The failure to give such notice and then to punish such conduct violates Plaintiff's right to due process.

8. As a direct and proximate result of Plaintiff's denial of due process he suffered humiliation and embarrassment, a loss of liberty, and lost opportunities for both personal enrichment and potential scholarships.

## COUNT III

1. Plaintiff reasserts each and every allegation above as if fully restated here.

2. A fundamental principal of due process is a right to be heard and present ones defense before an impartial body.

3. Despite the explicit assurance in the Medina School District Student Parent Handbook that a student "will have the right to due process and a written report of the incident will be filed with the appropriate administrator." Plaintiff was never given notice of the charges against him, never given an opportunity to present a defense, call witnesses on his behalf, or present the matter to an impartial hearing officer, or, for that matter any hearing officer and was never presented with a written report of the conduct of which he was accused of.

4. The above listed omissions by Defendants constitute violations of Plaintiff's right to due process.

5. As a direct and proximate result of this denial of due process Plaintiff suffered humiliation and embarrassment, a loss of liberty, and lost opportunities for both personal enrichment and potential scholarships.

WHEREFORE, Plaintiff demands judgment as follows:

I. As to Count I, in an amount sufficient to compensate him for the violation of his constitutional right to free expression in an amount exceeding $25,000.

II. As to Count II, in an amount necessary to compensate him for the violation of due process in an amount exceeding $25,000.

III. As to Count III, in an amount necessary to compensate him for the violation of due process in an amount exceeding $25,000.

IV. For an order directing Defendants to develop and publish a policy on private social media communications by students that is consistent with the Constitution of the United States.

V. For such other relief as the Court deems proper.

THE BAILEY LAW FIRM

STEVE C. BAILEY (0042706)
*Attorney for Plaintiff*
*60 Public Square Suite 202*
*Medina, Ohio 44256*
*(330) 723-4140*
*sbailey@sbaileylaw.com*

### JURY DEMAND

Now comes Plaintiff, by and through counsel, and hereby demands trial of the within matter by jury of the maximum number permitted by law.

STEVE C. BAILEY (0042706)